UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVETTE GONZALEZ, ROSA GUZMAN, MARGARITA GONZALEZ, and JORGE BERROTERAN, individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PEAK CALIFORNIA RESTAURANT GROUP, LLC, a Georgia limited liability company; PEAK RESTAURANT PARTERS [sic] LLC, a limited liability company doing business as iHop; ERICK BARRAGAN, an individual and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 3:25-cv-04068-AMO<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR ORDER REMANDING ACTION TO STATE COURT** |

The Motion for Order Remanding Action to State Court ("Motion") submitted by Plaintiffs Yvette Gonzalez, Rosa Guzman, Margarita Gonzalez, and Jorge Berroteran ("Plaintiffs"), having come before the Court in the above-captioned matter, and for good cause appearing therefore, is DENIED. For the reasons provided below, the Court has found that federal jurisdiction is proper in this matter under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).

**I.     Background**

On April 1, 2025, Plaintiffs filed their Complaint in the Superior Court of California, County of Contra Costa, asserting eight claims including failure to pay overtime and minimum wages, failure to provide meal and rest periods, waiting time penalties, wage statement violations, failure to reimburse business expenses, and unfair competition. On May 9, 2025, Defendants removed the case to this Court under the Class Action Fairness Act ("CAFA"). Plaintiffs subsequently filed the present motion to remand the case back to state court on June 11, 2025.

## II. Legal Standard

Under CAFA, the Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" there is minimal diversity. 28 U.S.C. § 1332(d).

Removal is proper if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). "The preponderance standard does not require a district court to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant has satisfied its burden." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020). A defendant may support removal by invoking reasonable assumptions. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922, 925 (9th Cir. 2019). So long as a defendant "relie[s] on a reasonable chain of logic and present[s] sufficient evidence to establish that the amount in controversy exceeds $5 million," it has met its burden. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).

When a plaintiff challenges the amount in controversy on a motion to remand, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88. This is because "[d]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met." *Id.* The amount in controversy is an "estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir., 2010).

## III. Discussion

### A. Sufficiency of Defendants' Evidence

In support of their Notice of Removal, Defendants submitted a declaration from Patricia Ards, the Director of Human Resources for the corporate parent of Defendant Peak Restaurant Partners, LLC ("PRP"). Ms. Ards attested to having access to personnel files, payroll data, and other employment records maintained in the ordinary course of business, including information specific to the named Plaintiffs. Her declaration provides information regarding the number of employees in certain positions, average hourly rates of pay, and the number of workweeks and pay periods relevant to non-exempt employees employed in California during the alleged putative class period.

1  Courts have routinely accepted similar declarations from HR personnel as competent evidence of
2  the amount-in-controversy. *See, e.g.*, *Johnson v. Parsec, Inc.*, 2022 WL 17407960, at *1 (C.D. Cal.
3  Dec. 2, 2022); *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *3 (C.D. Cal. Dec. 3, 2019); *Jones v.
4  Tween Brands, Inc.*, 2014 WL 1607636, at *1 (C.D. Cal. Apr. 22, 2014); *Cagle v. C & S Wholesale
5  Grocers, Inc.*, 2014 WL 651923, at *8 (E.D. Cal. Feb. 19, 2014). As in those cases, Ms. Ards's
6  declaration establishes a sufficient basis to support Defendants' amount-in-controversy calculation.

**B.     Sufficiency of Plaintiffs' Evidence**

Although Plaintiffs dispute the reasonableness of Defendants' amount-in-controversy calculations, they submit no evidence in support of their position. Plaintiffs provide neither alternative calculations nor declarations addressing the frequency of alleged violations, despite having the opportunity to do so. As the Supreme Court explained in *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014), when the amount-in-controversy is challenged, both sides must submit proof, and the court determines whether the removing party has met its burden by a preponderance of the evidence.

Courts in this circuit have consistently denied remand where plaintiffs fail to present contrary evidence. *See, e.g.*, *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1031 (C.D. Cal. 2017); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1041-1042 (N.D. Cal. 2014); *Hicks v. Grimmway Enterprises, Inc.*, 2023 WL 3319362, at *10-11 (S.D. Cal. May 9, 2023); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2019 WL 1501577, at *3 (N.D. Cal. Apr. 5, 2019); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017); *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (S.D. Cal. May 21, 2015); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015). Here, Defendants have provided competent evidence and conservative assumptions based on Plaintiffs' own allegations, while Plaintiffs have made no showing to rebut those assumptions.

**C.     Alleged Violations Occurring "At Times"**

Plaintiffs argue that Defendants' amount-in-controversy calculations are overstated because the Complaint alleges that violations occurred only "at times." However, this vague qualifier is not defined

3

or supported by any factual detail. At the same time, the Complaint broadly alleges that the violations arose from "Defendants' common course of conduct." Compl., at ¶ 34.[1] Courts have routinely rejected efforts to defeat removal jurisdiction under CAFA through ambiguous language, particularly when unsupported by evidence. *See, e.g.*, *Herrera v. Carmax Auto Superstores California, LLC*, 2014 WL 12586254, at *2 (C.D. Cal. June 12, 2014); *Radford v. Nexstar Broadcasting, Inc.*, 2025 WL 829601, at *3 (N.D. Cal. Mar. 14, 2025); *Thompson v. Fastaff, LLC*, 2022 WL 4109450, at *5 (C.D. Cal. Sept. 8, 2022); *Ramirez v. Cornerstone Bldg. Brands*, 2022 WL 1556664, at *1 (E.D. Cal. May 17, 2022); *Zamora v. Penske Truck Leasing Co., L.P.*, 2020 WL 4748460, at *4 (C.D. Cal. Aug. 17, 2020); *Vikram v. First Student Mgmt., LLC*, 2017 WL 4457575, at *4 (N.D. Cal. Oct. 6, 2017). Here, Plaintiffs offer no declarations or alternative violation rates to clarify or substantiate their allegations. In the absence of such evidence, Plaintiffs' use of the phrase "at times" does not undermine the reasonableness of Defendants' assumed violation rates.

### D.    Alleged Violations Occurring to Putative Class Members "Or Some of Them"

Likewise, Plaintiffs' use of the qualifier "or some of them" cannot support Plaintiffs' position that the alleged violations did not apply to the entire putative class. Such language, used in the alternative, does not preclude a removing defendant from assuming class-wide violations for purposes of calculating the amount in controversy. *See Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).

Similarly, phrases like "or some of them" do not limit the scope of potential recovery because this language allows for the possibility that violations were suffered by the entire putative class. *See, e.g.*, *Ross v. Tata Consultancy Servs. Ltd.*, 2024 WL 4122273, at *3 (C.D. Cal.); *Chavoya v. Merrill Gardens L.L.C.*, 2024 WL 3219724, at *8 (E.D. Cal. June 28, 2024); *Demaria v. Big Lots Stores – PNS, LLC*, 2023 WL 6390151, at *6 (E.D. Cal. Sept. 29, 2023).

The Court finds that Plaintiffs' use of the phrase "or some of them" does not render Defendants' assumed violation rates unreasonable or undermine the amount-in-controversy calculation.

---

[1] The complaint can be found at Dkt. No. 1 between pages 25 and 47. The Court cites to the complaint by paragraph.

### E. Unpaid Overtime Claim

Defendants estimate the amount in controversy for Plaintiffs' overtime claim based on the assumption that each class member worked one hour of unpaid overtime per week. Plaintiffs argue this assumption is excessive, pointing to the Complaint's use of the phrase "at times." However, the Complaint alleges a range of practices that, taken together, suggest systemic and ongoing wage violations. Compl. ¶ 42.

Courts routinely accepted similar once-per-week assumptions as reasonable where the complaint lacks specific limitations. *See, e.g.*, *Kastler v. Oh My Green, Inc.*, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019); *Cabrera v. South Valley Almond Co., LLC*, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021). Plaintiffs offer no contrary evidence or alternative assumption. Under these circumstances, Defendants' calculation— 1 hour/week $\times$ \$26.03/hour $\times$ 35,067 workweeks = \$912,794.01— is reasonable.

Moreover, this estimate does not account for other unpaid wage claims alleged in the Complaint, such as minimum wage violations and associated liquidated damages. Including even a limited estimate for liquidated damages would increase the amount in controversy by approximately \$490,938. Accordingly, the Court finds that Defendants' overtime estimate is conservative and supports federal jurisdiction under CAFA.

### F. Meal and Rest Period Claims

Defendants estimate the amount in controversy for Plaintiffs' meal and rest period claims by assuming two noncompliant meal breaks and two noncompliant rest breaks per week for each putative class member. Plaintiffs argue this estimate overstates the violation rate, citing their Complaint's use of the phrase "at times." However, Plaintiffs have not clarified the meaning or frequency of "at times," nor provided evidence to support a different assumption.

Plaintiffs allege that they and the putative class members were "at times" denied complete, timely, and uninterrupted 30-minute meal periods every five hours and 10-minute rest breaks every four hours, and that Defendants failed to provide one hour of pay at the regular rate as compensation for missed breaks. Compl. ¶¶ 55, 63. Given the lack of specific allegations regarding frequency, Defendants' assumption of two missed meal and two missed rest breaks per week is consistent with

Plaintiffs' own allegations and is reasonable where the complaint lacks specificity. *See, e.g.*, *Cocroft v. EquipmentShare.com Inc.*, 2024 WL 3877274, at *8 (S.D. Cal. Aug. 19, 2024); *Manu v. Gat Airline Ground Support, Inc.*, 2024 WL 5085312, at *4 (E.D. Cal. July 16, 2024); *Johnson v. Bamia 2 LLC*, 2022 WL 2901579, at *3 (E.D. Cal. July 22, 2022).

Defendants' calculation for each claim is as follows: $17.35/hour $\times$ 2 violations/week $\times$ 35,067 workweeks = $1,216,824.90 per claim. The combined amount in controversy for meal and rest period claims is therefore approximately $2,433,649.80. Ards Decl. ¶ 3, Dkt. No. 1-1.

### G. Waiting Time Penalties Claim

Plaintiffs argue that Defendants lack justification for estimating a 100% recovery of waiting time penalties. However, Plaintiffs' Complaint contains no allegations indicating that a lesser penalty would apply. Instead, Plaintiffs allege that Defendants, due to failures including unpaid overtime, did not pay all wages owed upon termination or resignation as required by California Labor Code §§ 201 and 202. Compl. ¶ 70.

These claims arise from broadly alleged wage violations, including unpaid overtime and missed meal and rest breaks, which under California law, support recovery of waiting time penalties. Compl. ¶¶ 42, 55, 63; *see Naranjo v. Spectrum Security Services, Inc.*, 13 Cal. 5th 94, 117 (2025). Given these generalized allegations, Defendants' assumption of a 100% violation rate for waiting time penalties is reasonable and consistent with case law. *See, e.g.*, *Gomez v. Metro Air Serv. Inc.*, 2023 WL 1822373, at *5 (C.D. Cal. Feb. 7, 2023); *Johnson v. Parsec, Inc.*, 2022 WL 17407960, at *1 (C.D. Cal. Dec. 2, 2022); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *9 (S.D. Cal. Nov. 1, 2019); *Ramos v. Schenker, Inc.,* 2018 WL 5779978, at *2 (C.D. Cal., Nov. 1, 2018).

Defendants' calculation for waiting time penalties is as follows: $17.48/hour $\times$ 8 hours/day $\times$ 30 days $\times$ 200 former employees = $839,040. Ards Decl. ¶ 4, Dkt. No. 1-1.

### H. Wage Statement Penalties Claim

Plaintiffs contend that Defendants' assumption of a 100% violation rate for wage statement penalties is overstated due to the Complaint's use of the qualifier "at times." However, Defendants' estimate is supported by Plaintiffs' own allegations that Defendants maintained policies and practices resulting in repeated wage statement inaccuracies. Compl. ¶ 78.

Defendants calculated the penalties based on approximately 224 non-exempt California employees during the one-year statutory period preceding the Complaint (April 1, 2024 to May 6, 2025). Employees were paid biweekly, resulting in 5,152 pay periods. Applying Labor Code § 226 penalties—$50 for the first violation per employee and $100 for each subsequent violation— Defendants estimated the total wage statement penalties at $504,000. Ards Decl. ¶ 5, Dkt. No. 1-1.

Plaintiffs have not provided evidence to dispute this calculation, which is reasonable given the broad nature of the underlying alleged noncompliant policies and practices. *See, e.g.*, *Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *7 (C.D. Cal. Feb. 19, 2019); *Parsittie v. Schneider Logistics, Inc.*, 2019 WL 6792807, at *6 (C.D. Cal. Aug. 13, 2019); *Lucas v. Michael Kors (USA) Inc.*, 2018 WL 2146403, at *8–9 (C.D. Cal. May 9, 2018).

**I.     Expense Reimbursement Claim**

Plaintiffs contend that Defendants overestimated the amount-in-controversy for unreimbursed expenses by assuming a 100% violation rate. Plaintiffs again rely on the use of their qualifier "at times." This argument lacks merit for the reasons discussed above. Defendants' estimate is supported by declaration testimony regarding the number of workweeks during the relevant period, while Plaintiffs have not submitted evidence to challenge these calculations. Plaintiffs' reliance on the qualifier "at times" is insufficient to demonstrate that violations were merely occasional, especially given the broad allegations of systematic noncompliance.

Defendants based their calculation on Plaintiffs' allegations that employees were required to use personal cell phones for work without reimbursement. Compl. ¶¶ 86-87. From April 1, 2021, through May 6, 2025, approximately 420 putative class members worked about 35,067 workweeks. Ards Decl. ¶ 3, Dkt. No. 1-1. Using a conservative estimate of $12.50 per workweek (equivalent to $50 per month) in unreimbursed cell phone expenses, Defendants calculated potential liability of at least $438,337.50. This assumption is consistent with California federal district court decisions. *See Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1138 (N.D. Cal. 2020). Plaintiffs have not demonstrated otherwise.

Based on the total amount-in-controversy for all claims — unpaid overtime wages ($912,794.01), meal and rest period violations ($2,433,649.80), waiting time penalties ($839,040), wage

7

statement penalties ($504,000), and unreimbursed expenses ($438,337.50) — the aggregate amount in controversy is approximately $5,127,821.31.

### IV.     Conclusion

For the foregoing reasons, Plaintiffs' motion to remand this case to state court is DENIED. The Court finds that Defendants have appropriately estimated the amount-in-controversy with respect to Plaintiffs' claims for overtime, meal and rest periods, waiting time penalties, wage statement penalties, and unreimbursed expenses. Accordingly, the Court concludes that the amount-in-controversy requirement for federal jurisdiction is satisfied.

**IT IS SO ORDERED.**

Dated: October 15, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**