SEYFARTH SHAW LLP
Elizabeth J. MacGregor (SBN 267326)
emacgregor@seyfarth.com
Steven Wong (SBN 293343)
stewong@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:  (415) 397-2823
Facsimile:   (415) 397-8549

Attorneys for Defendants
PEAK CALIFORNIA RESTAURANT GROUP, LLC;
PEAK RESTAURANT PARTNERS, LLC; ERICK
BARRAGAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVETTE GONZALEZ, ROSA GUZMAN, MARGARITA GONZALEZ, and JORGE BERROTERAN, individuals and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEAK CALIFORNIA RESTAURANT GROUP, LLC, a Georgia limited liability company; PEAK RESTAURANT PARTERS [sic] LLC, a limited liability company doing business as iHop; ERICK BARRAGAN, an individual and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No. 3:25-cv-04068-AMO<br><br>**DEFENDANTS PEAK CALIFORNIA RESTAURANT GROUP, LLC, PEAK RESTAURANT PARTNERS, LLC, AND ERICK BARRAGAN'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' INDIVIDUAL CLAIMS AND DISMISS CLASS CLAIMS**<br><br>Date:            March 5, 2026<br>Time:           2:00 p.m.<br>Courtroom:  10, 19th Fl.<br>Judge:          Hon. Araceli Martinez-Olguin<br><br>Complaint File: April 1, 2025<br>Removal Date:  May 9, 2025<br>Trial Date:       Not Set |

**PLEASE TAKE NOTICE** that, on March 5, 2026 at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable Araceli Martinez-Olguin, in the United States District Court, Northern District of California, 450 Golden Gate Avenue, Courtroom 10, 19th Floor, San Francisco, California 94102, Defendants Peak Restaurant Partners, LLC ("PRP"), Peak California Restaurant Group, LLC ("PCRG"), and Erick Barragan ("Barragan") (collectively, the "Defendants") will and hereby do move this Court, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and the California Arbitration Act ("CAA"), California Code of Civil Procedure § 1280, *et. seq.*, for an order compelling Plaintiffs Yvette Gonzalez, Rosa Guzman, Margarita Gonzalez, and Jorge Berroteran (collectively, the "Plaintiffs") to arbitrate their individual claims asserted in the operative Complaint and dismissing their class claims. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 687 (2010). In addition, Defendants hereby move this Court for an order staying the civil action until a ruling on the Motion. If arbitration is ordered, Defendants requests that this Court dismiss this case in its entirety or, in the alterative, enter an order staying the civil action, until such arbitration is completed, pursuant to 9 U.S.C. § 3 and California Code of Civil Procedure § 1281.4.

This Motion is based on this Notice of Motion and Motion to Compel Arbitration, the accompanying Memorandum of Points and Authorities, the Declarations of Elizabeth J. MacGregor and Sandor Johnson, and accompanying exhibits, the Request for Judicial Notice and accompanying exhibits, and the papers and pleadings on file in this case, and such other evidence and arguments as may be presented to the Court.

DEFENDANTS' MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND DISMISS CLASS CLAIMS / CASE NO. 3:25-CV-04068-AMO

321863097v.3

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND .......................................................................................... 1

    A. Defendants Peak California Restaurant Group, LLC and Peak Restaurant Partners, LLC, and Erick Barragan .......................................................................................... 1

    B. Plaintiffs Were Employed By Peak Restaurant Partners ....................................... 1

    C. Plaintiffs Agreed to Arbitrate Any Employment Disputes ..................................... 1

    D. Plaintiffs Seek to Maintain a Class Action Alleging Wage And Hour Violations ............. 3

    E. Plaintiffs Have Refused to Submit to Arbitration ................................................... 3

III. ARGUMENT .................................................................................................................. 3

    A. Both Federal and California Law Require the Parties to Arbitrate the Present Dispute Pursuant to their Arbitration Agreements .................................................. 3

        1. The FAA Governs the Parties' Arbitration Agreements Because the Agreements Involve Interstate Commerce .................................................. 3

        2. The FAA Requires Arbitration of Plaintiffs' Claims .................................. 5

    B. The Parties Entered Into Valid Arbitration Agreements ......................................... 6

        1. Each Plaintiff Signed a Valid Arbitration Agreement ............................... 6

        2. Plaintiffs' Electronic Signatures Are Valid ............................................... 7

        3. Plaintiffs' Claims Are Covered By Their Arbitration Agreements ........... 8

    C. The Arbitration Agreements Are Not Unconscionable ........................................... 9

        1. The Arbitration Agreements Are Not Procedurally Unconscionable ....... 10

        2. The Arbitration Agreements Are Not Substantively Unconscionable ..... 10

        3. To The Extent The Court Finds Any Part of the Arbitration Agreements Unconscionable, The Court Should Sever Such Part And Enforce The Remainder Of The Agreements ................................................................ 12

    D. Defendant Barragan May Also Enforce The Arbitration Agreement ................... 12

        1. Barragan May Enforce the Parties' Arbitration Agreements Under the Agency Exception ..................................................................................... 12

        2. Defendant Barragan May Enforce the Parties' Arbitration Agreements Under the Doctrine of Equitable Estoppel .................................................. 13

i

321863097v.3

3.      Defendant Barragan May Enforce the Parties' Arbitration Agreements As a Third-Party Beneficiary ................................................................................. 15

E.      The Court Must Compel Plaintiffs' Individual Claims To Arbitration ............................ 16

F.      The Court Must Dismiss Plaintiffs' Class Claims Or, in the Alternative, Stay Their Class Claims Pending The Completion of The Arbitration of Their Individual Claims ............................................................................................................. 17

IV.      CONCLUSION ...................................................................................................................... 18

321863097v.3

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995)................................................................................................................. 4

*Amin v. Advanced Sterilization Prods. Svcs. Inc.*,
No. SACV 18-1528 JVS (JDEx), 2019 WL 2912862 (C.D. Cal. Jan. 7, 2019) .............................. 14

*Anthony v. Ritz-Carlton Hotel Co., L.L.C.*,
No. 2:24-CV-00965-DAD-AC, 2025 WL 931928 (E.D. Cal. Mar. 27, 2025) ................................. 17

*Arouh v. GAN Ltd.*,
No. 8:23-CV-02001-FWS, 2024 WL 3469032 (C.D. Cal. Mar. 22, 2024) ................................. 12, 13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)........................................................................................................5, 9, 10

*Champion v. Amazon.com, LLC*,
No. 18-cv-05222-MMC, 2019 WL 4345915 (N.D. Cal. Sept. 12, 2019)........................................ 14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ..................................................................................................... 9

*Cole v. Burns Int'l Sec. Servs.*,
105 F.3d 1465 (D.C. Cir. 1997) ................................................................................................. 11

*Compucredit Corp. v. Greenwood*,
132 S. Ct. 665 (2012)................................................................................................................. 3

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) ..................................................................................................... 8

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)................................................................................................................... 5

*Doctor's Associates, Inc. v. Casarotto*,
517 U.S. 681 (1996)................................................................................................................... 5

*Galvan v. Michael Kors USA Holdings, Inc.*,
No. CV1607379BROAFMX, 2017 WL 253985 (C.D. Cal. Jan. 19, 2017) ..................................... 8

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)..................................................................................................................... 9

*Ingle v. Cir. City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003) ..................................................................................................... 6

*Itkoff v. ABC Phones of N. Carolina, Inc.*,
No. 817CV02043JLSJDE, 2018 WL 6242158 (C.D. Cal. Oct. 11, 2018) ....................................... 8

iii

*Juarez v. Soc. Fin., Inc.*,
   No. 20-CV-03386-HSG, 2021 WL 1375868 (N.D. Cal. Apr. 12, 2021)............................................ 7

*Kilgore v. KeyBank, Nat. Ass'n*,
   718 F.3d 1052 (9th Cir. 2013) ................................................................................................ 5, 9

*Lamps Plus, Inc. v. Varela*,
   587 U.S. 176 (2019).................................................................................................................. 16

*Lucas v. Michael Kors (USA), Inc.*,
   No. CV181608MWFMRWX, 2018 WL 6177225 (C.D. Cal. Aug. 20, 2018)................................. 8

*Maharaj v. Charter Commc'ns, Inc.*,
   No. 20-CV-00064-BAS-LL, 2021 WL 5014352 (S.D. Cal. Oct. 27, 2021)..................................... 17

*Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*,
   473 U.S. 614 (1985).................................................................................................................... 4

*Morton v. Darden Restaurants, Inc.*,
   No. CV 8:17-1865-HMH-KFM, 2018 WL 1531634 (D.S.C. Mar. 2, 2018)................................... 4

*Moses H. Cone Mem'l Hosp. v Mercury Const. Corp.*,
   460 U.S. 1 (1983)................................................................................................................ 4, 5, 9

*Munoz v. Luby's Inc.*,
   No. CIV.A. H-11-2984, 2011 WL 6291966 (S.D. Tex. Dec. 14, 2011)........................................ 4

*Nanavati v. Adecco USA, Inc.*,
   99 F. Supp. 3d 1072 (N.D. Cal. 2015) ....................................................................................... 8

*Netbula, LLC v. BindView Dev. Corp.*,
   516 F. Supp. 2d 1137 (N.D. Cal. 2007) ..................................................................................... 6

*Ortiz v. Volt Mgmt. Corp.*,
   No. 16-cv-07096-YGR, 2017 WL 2404977 (N.D. Cal. June 2, 2017)........................................... 14

*Perry v. Thomas*,
   482 U.S. 483 (1987).................................................................................................................... 5

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2016) ................................................................................................... 12

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984)........................................................................................................................ 4

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010)............................................................................................................... 5, 16

*Taft v. Henley Enterprises, Inc.*,
   No. SACV151658JLSJCGX, 2016 WL 9448485 (C.D. Cal. Mar. 2, 2016) ................................... 8

*Vasquez v. RSI Home Prods., Inc.*,
   No. 820CV01494JWHJDEX, 2020 WL 6778772 (C.D. Cal. Nov. 12, 2020) ................................ 17

iv

*Villamar v. Clean Harbors Env't Servs. Inc.*,
　　No. 2:22-cv-03966- MEMF-(JEMx), 2022 WL 4465549 (C.D. Cal. Sept. 23, 2022) .................... 13

**State Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
　　24 Cal. 4th 83 (2000) ............................................................................................................ 10, 11

*Boucher v. Alliance Title Co., Inc.*,
　　127 Cal. App. 4th 262 (2005) ...................................................................................................... 14

*Cione v. Foresters Equity Servs., Inc.*,
　　58 Cal. App. 4th 625 (1997) ..................................................................................................... 6, 16

*Dryer v. Los Angeles Rams*,
　　40 Cal. 3d 406 (1985) ............................................................................................................ 12, 13

*Garcia v. Pexco, LLC*,
　　11 Cal. App. 5th 782 (2017) ............................................................................................. 12, 13, 14

*Goonewardene v. ADP, LLC*,
　　6 Cal. 5th 817 (2019) ..................................................................................................................... 15

*Jersey v. John Muir Med. Ctr.*,
　　97 Cal. App. 4th 814 (2002) ......................................................................................................... 10

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
　　74 Cal. App. 4th 1105 (1999) .................................................................................................... 7, 10

*Lucas v. Hamm*,
　　56 Cal. 2d 583 (1961) .................................................................................................................... 15

*Marenco v. DirecTV LLC*,
　　233 Cal. App. 4th 1409 (2015) ..................................................................................................... 13

*Martinez v. BaronHR, Inc.*,
　　51 Cal. App. 5th 962 (2020) ............................................................................................................ 6

*McManus v. CIBC World Mkts. Corp.*,
　　109 Cal. App. 4th 76 (2003) ...................................................................................................... 9, 10

*Mercury Ins. Grp. v. Superior Ct.*,
　　19 Cal. 4th 332 (1998) ..................................................................................................................... 6

*Metalclad Corp. v. Ventana Envtl. Org. P'ship*,
　　109 Cal. App. 4th 1705 (2003) ..................................................................................................... 14

*Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*,
　　186 Cal. App. 4th 696 (2010) ....................................................................................................... 14

*Moncharsh v. Heily & Blase*,
　　3 Cal. 4th 1 (1992) ........................................................................................................................... 6

DEFENDANTS' MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND DISMISS CLASS
CLAIMS / CASE NO. 3:25-CV-04068-AMO

321863097v.3

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*,
    171 Cal. App. 4th 35 (2009) ............................................................................... 15, 16

*Ronay Fam. Ltd. P'ship v. Tweed*,
    216 Cal. App. 4th 830 (2013) ...................................................................................... 16

*Ruiz v. Moss Bros. Auto Grp.*,
    232 Cal. App. 4th 836 (2014) .................................................................................... 7, 8

*Shaw v. Regents of Univ. of California*,
    58 Cal. App. 4th 44 (1997) ............................................................................................ 6

*Thomas v. Westlake*,
    204 Cal. App. 4th 605 (2012) ..................................................................................... 13

**Federal Statutes**

9 U.S.C. § 1, *et seq.* ........................................................................................................ 6

9 U.S.C. § 2 ............................................................................................................... 3, 4, 5

9 U.S.C. § 4 ...................................................................................................................... 5

Federal Arbitration Act .............................................................................................. *passim*

**State Statutes**

Cal. Civ. Code § 1556 ...................................................................................................... 6

Cal. Civ. Code § 1633.7 ................................................................................................... 7

Cal. Civ. Code § 1633.9(a) .............................................................................................. 7

Cal. Civ. Proc. Code § 1280, *et seq.* ............................................................................... 6

California Arbitration Act ................................................................................................. 6

Labor Code § 229 ............................................................................................................. 5

**Rules**

Rule 13(b)(i) ................................................................................................................... 10

Rule 22(b) ......................................................................................................................... 2

Rule 23(a) ..................................................................................................................... 2, 11

Rule 23(b) ....................................................................................................................... 11

Rule 45(a) ..................................................................................................................... 2, 11

Rule 46(a) ....................................................................................................................... 11

Rules 13(b) ........................................................................................................................ 2

vi

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The four Plaintiffs in this case, Yvette Gonzalez, Rosa Guzman, Margarita Gonzalez, and Jorge Berroteran (collectively, the "Plaintiffs") signed valid and enforceable arbitration agreements, which cover their claims in this action and require each of them to submit those claims to individual arbitration. Accordingly, the Court should dismiss Plaintiffs' class claims and compel arbitration of their individual claims. Such an order is consistent with federal and California law favoring arbitration, as well as judicial efficiency.

## II.    FACTUAL BACKGROUND

### A.    Defendants Peak California Restaurant Group, LLC and Peak Restaurant Partners, LLC, and Erick Barragan

Plaintiffs were employed by Defendant Peak Restaurant Partners, LLC ("PRP"). Declaration of Sandor Johnson ("Johnson Decl."), ¶ 3. PRP operates 40 IHOP restaurants in seven states, including California, Colorado, Idaho, Montana, South Dakota, Utah, and Wyoming. *Id*., ¶ 2. Defendant Peak California Restaurant Group, LLC ("PCRG") is a subsidiary of PRP.  *Id*.  Defendant Erick Barragan is or was the manager for each of the Plaintiffs.  *Id*., ¶ 3.

### B.    Plaintiffs Were Employed By Peak Restaurant Partners

Plaintiffs in this case worked for PRP as restaurant staff at the IHOP restaurant located in Richmond, California: Yvette Gonzalez was hired on May 2, 2021; Rosa Guzman was hired on October 13, 2017, Margarita Gonzalez was hired on February 21, 2021; and Jorge Berroteran was hired on March 12, 2021 as a cook.  Johnson Decl., ¶¶ 5-8.  On or around each of their start dates, Plaintiffs reviewed and signed arbitration agreements.  *Id*.  Plaintiffs each signed the same version of the arbitration agreement.  *Id*., Exhs. A-D.  Each Plaintiff electronically signed the arbitration agreements using Talent Reef, which required them each to create unique usernames and confidential passwords created by them and not known to PRP, PCRG, or their manager, Erick Barragan.  *Id*., ¶¶ 5-8.

### C.    Plaintiffs Agreed to Arbitrate Any Employment Disputes

Each of the arbitration agreements provides that it is the "exclusive way to resolve employment related disputes."  Johnson Decl., ¶¶ 5-8, Exhs. A-D, p. 1. The agreement clearly states in bold, all-

1

capital letters, that "**ARBITRATION OF THE DISPUTES AND CLAIMS COVERED BY THIS POLICY SHALL BE THE SOLE AND EXCLUSIVE METHOD OF RESOLVING ANY AND ALL EXISTING AND FUTURE DISPUTES OR CLAIMS ARISING BY AND BETWEEN THE COMPANY AND YOU.**" *Id.* (emphasis in original).[1]

Each arbitration agreement specifically states that it is governed by the Federal Arbitration Act. Johnson Decl., ¶¶ 5-8, Exhs. A-D, p. 2. The agreements provide that arbitration shall be conducted using the Employment Arbitration Rules of the American Arbitration Association. *Id.* Both the agreements and the AAA Employment Arbitration Rules provide for a neutral arbitrator. *Id.*, Exhs. A-D, p. 2; Request for Judicial Notice ("RJN"), Exh. 1 (Rules 13(b), 17). The AAA Employment Arbitration Rules further provide for a written award. *Id.*, (Rule 45(a)).

The arbitration agreements also allow the Parties the opportunity to conduct discovery sufficient to present a meaningful prosecution or defense of the claims. Johnson Decl., ¶¶ 5-8, Exhs. A-D, p. 2. The agreements provide that the discovery process will be governed by the AAA Commercial Rules. *Id.* Those rules provide for an exchange of documents between the Parties. RJN, Exh. 1 (Rule 22(b)). Notably, the Rules provide that "[t]he arbitrator *shall manage any necessary exchange of information among the parties with a view to* achieving an efficient and economical resolution of the dispute, while at the same time *promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses*." *Id.*, Rule 23(a) (emphasis added). The rules further provide for a preliminary hearing, at which "the parties and the arbitrator should be prepared to discuss and establish a procedure for the conduct of the arbitration that is appropriate to achieve a fair, efficient, and economical resolution of the dispute." *Id.*, Rule 22 (b). Topics to be considered at the preliminary hearing include the exchange of documents and "whether to establish any additional procedures to obtain information that is relevant and material to the outcome of disputed issues." *Id.*, P-2(a)(viii), (ix).

The arbitration agreements do not limit available remedies. Johnson Decl., ¶¶ 5-8, Exhs. A-D. The agreements provide that the costs of arbitration "shall be allocated and paid in accordance with

---

[1] The agreement defines the "Company" to include Peak Restaurant Partners, LLC, "together with its affiliates, subsidiaries or parent corporations or entities, and their successors and assigns." Johnson Decl., Exhs. A-D, p. 1. As a subsidiary, Peak California Restaurant Group, LLC is a party to the agreement.

2

321863097v.3

then-applicable federal law." *Id.*, Exhs. A-D, p. 2.  The agreements also specifically require PRP to "pay all of the arbitrator's fees and the arbitration-related costs" if required by applicable federal law. *Id.*

The agreements also provide for severability of any unenforceable terms. Specifically, each agreement states that:

> PRP and You understand and agree that if any term or portion of this policy shall, for any reason, be held to be invalid or unenforceable or to be contrary to public policy or any law, then the remainder of this policy shall not be affected by such invalidity or unenforceability but shall remain in full force and effect, as if the invalid or unenforceable term or portion thereof had not existed within this Policy.

*Id.*, Exhs. A-D, p. 3.

### D. Plaintiffs Seek to Maintain a Class Action Alleging Wage And Hour Violations

On April 1, 2025, Plaintiffs filed a Class Action Complaint against Defendants alleging (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting time penalties; (6) wage statement violations; (7) failure to indemnify; and (8) unfair competition. (Dkt. Dkt. 1, Ex. A.)  Defendants answered the complaint raising arbitration as a defense.  (Dkt. 1, Ex. B, C.)

### E. Plaintiffs Have Refused to Submit to Arbitration

On October 10, 2025, counsel for Defendants sent Plaintiffs' counsel copies of the arbitration agreements signed by each of the Plaintiffs and asked that Plaintiffs agree to submit their claims to arbitration. Declaration of Elizabeth J. MacGregor ("MacGregor Decl."), ¶ 2.  On November 13, 2025, counsel for Plaintiffs responded that the Plaintiffs do not agree to arbitrate their claims.  *Id.*, ¶ 3.

## III. ARGUMENT

### A. Both Federal and California Law Require the Parties to Arbitrate the Present Dispute Pursuant to their Arbitration Agreements

#### 1. The FAA Governs the Parties' Arbitration Agreements Because the Agreements Involve Interstate Commerce

The United States Supreme Court consistently has reiterated that the Federal Arbitration Act ("FAA") expounds a strong policy in favor of upholding arbitration provisions and requires courts to enforce agreements to arbitrate according to their terms. *See Compucredit Corp. v. Greenwood*, 132 S. Ct. 665, 668-69 (2012).  9 U.S.C. § 2 ("an agreement in writing to submit to arbitration an existing

3

321863097v.3

controversy arising out of a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration, whether the problem at hand is construction of the contract language or an allegation of waiver, delay, or like defense to arbitrability. *See Moses H. Cone Mem'l Hosp. v Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

The FAA applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995) ("we conclude that the word 'involving' is broad and is indeed the functional equivalent of 'affecting.' . . . this Court has previously described the [FAA's] reach expansively as coinciding with the of the Commerce Clause."). The FAA applies equally in both federal and state courts. *See Southland Corp. v. Keating*, 465 U.S. 1, 14-15 (1984); *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 627 (1985).

The FAA applies to the arbitration agreements in the present case. The Parties' arbitration agreements expressly state the Parties' mutual intent for their agreements to be subject to the FAA. Johnson Decl., ¶¶ 5-8, Exhs. A-D ("this Agreement is governed by and is entered into pursuant to the Federal Arbitration Act."). The FAA also clearly applies here because PRP engages in interstate commerce by operating restaurants in multiple states, engaging in a multi-state advertising campaign, and procuring supplies for those restaurants that move in interstate commerce. *Id*, ¶ 2. *See Morton v. Darden Restaurants, Inc.*, No. CV 8:17-1865-HMH-KFM, 2018 WL 1531634, at *3 (D.S.C. Mar. 2, 2018) (arbitration agreement involved interstate commerce and was governed by the FAA where "[t]he defendant operates LongHorn Steakhouse restaurants throughout the United States, receives goods and products through interstate shipping, and relies on interstate communication to run its business and serve its customers …."); *Munoz v. Luby's Inc.*, No. CIV.A. H-11-2984, 2011 WL 6291966, at *3 (S.D. Tex. Dec. 14, 2011) ("Not only does the contract provide that the FAA applies, but Luby's business of operating restaurants throughout the country involves interstate commerce and thus supports the statute's application.").

4

DEFENDANTS' MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND DISMISS CLASS CLAIMS / CASE NO. 3:25-CV-04068-AMO

321863097v.3

### 2.    The FAA Requires Arbitration of Plaintiffs' Claims

The FAA does not leave a court with any discretion regarding whether to compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Rather, the FAA requires the court to compel arbitration anytime a party fails or refuses to arbitrate its dispute where the arbitration agreement (1) is a part of a contract or transaction involving interstate commerce and (2) is valid under the general principles of contract law. *See* 9 U.S.C. §§ 2, 4; *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687-688 (1996); *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) ("The FAA 'mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed'") (emphasis in original). Because arbitration is a highly favored means of settling disputes, the Supreme Court has held that arbitration agreements "must be 'rigorously enforced.'" *Perry v. Thomas*, 482 U.S. 483, 490 (1987) (arbitration agreement upheld and arbitration compelled for claim of unpaid wages under Labor Code section 229); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

As the Supreme Court explained in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the FAA embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Id.*, at 339; *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control.") (internal quotations omitted). The Ninth Circuit observed and further enforced this principle in *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052 (9th Cir. 2013), emphasizing that "[t]he FAA was intended to overcome an anachronistic judicial hostility to agreements to arbitrate … that resulted in courts refusals to enforce agreements to arbitrate." *Id.*, at 1057 (internal quotations omitted). Accordingly, state laws hostile to arbitration agreements are preempted by the FAA. *Concepcion*, 563 U.S. at 343 ("nothing in [the FAA] suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives.").

DEFENDANTS' MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND DISMISS CLASS CLAIMS / CASE NO. 3:25-CV-04068-AMO

321863097v.3

Because the FAA governs the arbitration agreements at issue in the present case, the public policy of the FAA to favor enforcement of arbitration agreements requires granting Defendants' motion to compel arbitration. The California Arbitration Act ("CAA") also requires courts to apply a strong presumption in favor of arbitration. *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 9 (1992) ("[T]he Legislature has expressed a strong public policy in favor of arbitration" and will "indulge every intendment to give effect to such proceedings."); *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 642 (1997) ("[A] heavy presumption weighs the scales in favor of arbitrability….").

### B.      The Parties Entered Into Valid Arbitration Agreements

#### 1.      Each Plaintiff Signed a Valid Arbitration Agreement

In determining whether an arbitration agreement is valid, "federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). Under California law, a contract is valid where there are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." *Shaw v. Regents of Univ. of California*, 58 Cal. App. 4th 44, 52–53 (1997); *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007).

Here, the Parties' arbitration agreements satisfy each of these requirements for validity. <u>First</u>, all parties were capable of contracting. *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights."). Plaintiffs were the age of majority when they signed the Arbitration Agreements. (Johnson Decl., ¶¶ 5-8). PRP is unaware of evidence that Plaintiffs were incompetent at any time during their employment. <u>Second</u>, PRP and each of the Plaintiffs consented to the arbitration agreements in that each signed their respective agreements. (Johnson Decl., ¶¶ 5-8, Exhs. A-D.) *See Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 967 (2020) ("Generally, one who signed an instrument, which is on its face a contract, is deemed to assent to all its terms.") (internal quotations omitted). <u>Third</u>, the object of the Parties' agreements is lawful in that arbitration is both lawful and expressly permitted under both the FAA and the CAA. *See* 9 U.S.C. § 1, *et seq.*; Cal. Civ. Proc. Code § 1280, *et seq.*; *Mercury Ins. Grp. v. Superior Ct.*, 19 Cal. 4th 332, 342 (1998) ("The purpose of this law is to promote contractual arbitration, in accordance with a 'strong public

DEFENDANTS' MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND DISMISS CLASS CLAIMS / CASE NO. 3:25-CV-04068-AMO

321863097v.3

policy' in favor thereof"). <u>Fourth</u>, PRP gave valid consideration for each Plaintiffs' agreement by continuing their employment and by mutually agreeing to arbitrate any claims that PRP might have against each of the Plaintiffs. *See Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1126 (1999) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other"); *Juarez v. Soc. Fin., Inc.*, No. 20-CV-03386-HSG, 2021 WL 1375868, at *4 (N.D. Cal. Apr. 12, 2021) ("'[w]here an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other' as '[b]oth parties gave up the same rights and thus neither gains an advantage over the other."). Accordingly, the Parties' arbitration agreements are valid and enforceable.

### 2.    Plaintiffs' Electronic Signatures Are Valid

Plaintiffs manifested their intent to be bound to the arbitration agreement through their signatures.  An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner." Cal. Civ. Code § 1633.9(a); *see also id.*, § 1633.7. (signature cannot be denied legal effect or enforceability solely because it is in electronic form). "[T]he burden of authenticating an electronic signature is not great," and authenticity of the electronic signature "may be shown in any manner," including "by circumstantial evidence and by its contents." *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 844-45 (2014) (internal citations omitted).

Each Plaintiff electronically signed the arbitration agreement, true and correct copies of which were taken from their personnel files.  (Johnson Decl., ¶¶ 5-8, Exhs. A-D).  At the time Plaintiffs were hired, PRP employees completed their onboarding documents, including signing Arbitration Agreements, using Talent Reef.  (*Id.*, ¶ 4.)  To access their respective Talent Reef accounts to complete their onboarding documents, each PRP employee created a unique username and confidential password of their choice. (*Id.*)  Each employee's Talent Reef password was not and is not known to and cannot be obtain by PRP, PCRG, or Mr. Barragan.  (*Id.*)  Like all PRP employees, Plaintiffs were required to log into Talent Reef using their unique usernames and confidential self-created password when signing electronic forms and agreements.  (*Id.*, ¶¶ 5-8.)

7

321863097v.3

As such, the electronic signature on the parties' Arbitration Agreement could only have been made by Plaintiffs. *See Ruiz*, 232 Cal. App. 4th at 843-44 (arbitration agreement with employee's printed name and electronic time stamp showed execution of arbitration agreement); *accord, Itkoff v. ABC Phones of N. Carolina, Inc.*, No. 817CV02043JLSJDE, 2018 WL 6242158, at *2-3 (C.D. Cal. Oct. 11, 2018) (agreement to arbitrate existed where employee electronically signed an arbitration agreement through employee portal system by "using a unique username and password," viewed agreement in an online module, and then clicked "acknowledge" in an acknowledgment module, which "record[ed] the employee's digital signature via date and time stamp"); *Lucas v. Michael Kors (USA), Inc.*, No. CV181608MWFMRWX, 2018 WL 6177225, at *1, 6 (C.D. Cal. Aug. 20, 2018) (agreement to arbitrate existed where plaintiff electronically signed onboarding documents including the arbitration agreement, despite claiming she could not recall being presented with the agreement); *Galvan v. Michael Kors USA Holdings, Inc.*, No. CV1607379BROAFMX, 2017 WL 253985, at *4 (C.D. Cal. Jan. 19, 2017) (valid agreement for arbitration existed where plaintiff signed the agreement through a system in which "associates are required to enter personal identifying information, proceed through various agreements one-by-one, confirm that their electronic signature will have the same effect as their signature, and finally, receive a confirmation of the various agreements they have viewed and/or accepted"); *Taft v. Henley Enterprises, Inc.*, No. SACV151658JLSJCGX, 2016 WL 9448485, at *3 (C.D. Cal. Mar. 2, 2016) (agreement to arbitrate existed where employee electronically signed an arbitration agreement with a unique username and password, despite claiming not to remember signing the agreement); *Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1076 (N.D. Cal. 2015) (employer met "low burden" of demonstrating employee had electronically signed an arbitration agreement).  Plaintiffs thus expressly agreed to submit their employment-related claims to final and binding individual arbitration.

### 3.    Plaintiffs' Claims Are Covered By Their Arbitration Agreements

The only prerequisite to enforcement of an arbitration agreement is that the parties entered into a valid agreement to arbitrate the dispute. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("[t]he FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue") (internal quotation

8

marks omitted); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) ("The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.") Courts must resolve doubts on questions of arbitrability in favor of arbitration. *See Moses H. Cone*, 460 U.S. at 24–25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.")

Here, Plaintiffs claim that Defendants PRP and PCRG violated various California wage and hour laws by failing to pay all wages owed, pay meal and rest break premiums, provide accurate wage statements, and indemnify expenses incurred in the course of employment, among other related claims. (*See generally* Cmplt.). Thus, each Plaintiff's claims unquestionably fall within the scope of their respective arbitration agreements, which covers all employment-related disputes.

### C.    The Arbitration Agreements Are Not Unconscionable

The party opposing enforcement of an arbitration agreement bears the heavy burden of proving that the claims are not subject to arbitration. *See Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."). Although Plaintiffs may seek to avoid their obligations to arbitrate by claiming that their agreements to arbitrate are unconscionable, the agreements are sound and must be enforced according to their terms. Proving that an agreement is unconscionable requires the party resisting enforcement to show that the agreement is both procedurally and substantively unconscionable. *See Kilgore*, 718 F.3d at 1059; *McManus v. CIBC World Mkts. Corp.*, 109 Cal. App. 4th 76, 87 (2003). Importantly, under the FAA—which applies here (*see* Section III.A., *supra*)—courts may not invalidate arbitration agreements under state laws that are applicable only to arbitration contracts. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Nor may they apply traditional contract defenses, such as unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and destroy the FAA's purpose to ensure that private arbitration agreements are enforced according to their terms. *Id.*, at 343–44. When a state law prohibits outright the arbitration of a particular type of claim, the

9

analysis is straightforward: the conflicting rule is displaced by the FAA. *Id.*, at 341. As set forth below, Plaintiffs cannot establish procedural or substantive unconscionability.

### 1.   The Arbitration Agreements Are Not Procedurally Unconscionable

Under California law, for an agreement to be procedurally unconscionable, there must be an element of "oppression" or "surprise." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 96-97 (2000). Significantly, arbitration agreements are not invalid simply because they are imposed as a condition of employment. *See Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal. App. 4th 1105, 1122-23 (1999); *Jersey v. John Muir Med. Ctr.*, 97 Cal. App. 4th 814, 824 (2002).

Here, there are no elements of surprise or oppression in the arbitration agreements, especially since each of the arbitration agreements consists of a standalone four-page document that is clearly labeled. Plaintiffs cannot reasonably contend that the agreements are procedurally unconscionable.

### 2.   The Arbitration Agreements Are Not Substantively Unconscionable

An arbitration agreement will not be deemed unenforceable unless it is also substantively unconscionable. *McManus*, 109 Cal. App. 4th at 87. Substantive unconscionability focuses on the terms of an agreement and whether they produce "overly harsh" or "one-sided" results. *Armendariz*, 24 Cal. 4th at 114. Under California law, employment arbitration agreements must provide for: (1) a neutral arbitrator; (2) adequate discovery; (3) a written award; (4) all remedies otherwise available in court; and (5) not require the employee to pay unreasonable forum costs. *Id*. at 102.[2]

**Neutral Arbitrator**.  Selecting a neutral arbitrator is the first element of an enforceable agreement to arbitrate employment claims. *See Armendariz*, 24 Cal. 4th at 103. Here, the agreements provide that "[a] neutral arbitrator shall be selected by mutual agreement of the parties …." *See* Johnson Decl., ¶¶ 5-8, Exhs. A-D, p. 2. The AAA Employment Arbitration Rules further provide that the neutral arbitrator will be "experienced in employment law or workplace disputes chosen from the AAA's Employment Panel." RJN, Exh. 1 (Rule 13(b)(i)). Therefore, the agreement satisfies this element.

**Adequate Discovery.**  Arbitration agreements provide for adequate discovery where the parties

---

[2]     As noted above, under *Concepcion*, courts may not invalidate arbitration agreements under state law applicable only to arbitration contracts. *Concepcion*, 563 U.S. at 339. The *Armendariz* standard applies only to arbitration contracts. Thus, it should not apply in this case. But even if *Armendariz* were to apply, the Parties' respective arbitration agreements would still satisfy all of these requirements.

10

are entitled to discovery sufficient to adequately arbitrate their statutory claims, including access to essential documents and witnesses, *as determined by the arbitrator*. *See Armendariz*, 24 Cal. 4th at 984 (emphasis added). Here, the agreements provide for discovery under the AAA Commercial Rules. Johnson Decl., ¶¶ 5-8, Exhs. A-D, p. 2. Those rules specifically provide for the exchange of documents, and provide for the arbitrator and parties to establish "any additional procedures to obtain information that is relevant and material to the outcome of disputed issues." RJN, Exh. 2, (Rule 23(b), P-2(a)(viii), (ix)). The Rules further provide that the "arbitrator *shall manage any necessary exchange of information among the parties with a view to* achieving an efficient and economical resolution of the dispute, while at the same time *promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses*." *Id*., Rule 23(a) (emphasis added). These provisions plainly satisfy *Armendariz*'s discovery requirements.

**Written Award.** An enforceable arbitration agreement must also provide for a written award. *Armendariz*, 24 Cal. 4th at 102. Here, the AAA Employment Arbitration Rules provide for such a written award. RJN, Exh. 1 (Rule 45(a)). Therefore, the agreement meets this element as well.

**Adequate Remedies**. For an arbitration agreement to be enforceable, it must allow all remedies that would otherwise be available in court. *Armendariz*, 24 Cal. 4th at 102. The AAA Employment Arbitration Rules provide that the "arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with applicable law." RJN, Exh. 1, (Rule  46(a)). As a result, the agreement also meets this requirement.

**No Unreasonable Costs**. Under California law, an arbitration agreement cannot generally require the employee to bear any type of expense that the employee would not be required to bear if she were free to bring the action in court. *Armendariz*, 24 Cal. 4th at 111-12. Federal courts have held similarly. *See Cole v. Burns Int'l Sec. Servs*., 105 F.3d 1465, 1468 (D.C. Cir. 1997) (interpreting arbitration agreement as requiring employer to pay arbitration costs and construing agreement as valid; "can an employer require an employee to arbitrate all disputes and also require the employee to pay all or part of the arbitrators' fees?  We hold that it cannot.")

Under each agreement here, the "costs of arbitration … shall be allocated and paid in accordance

11

with then-applicable federal law." Johnson Decl., ¶¶ 5-8, Exhs. A-D. The agreements specifically require PRP to "pay all of the arbitrator's fees and the arbitration-related costs" if required by applicable federal law. *Id*. The agreement therefore meets this requirement.

### 3. To The Extent The Court Finds Any Part of the Arbitration Agreements Unconscionable, The Court Should Sever Such Part And Enforce The Remainder Of The Agreements

As described above, the arbitration agreements are not unconscionable. Nevertheless, should the Court find any part of the agreements to be unconscionable, the Court should sever that part and enforce the remainder of the agreement. *Poublon v. C.H. Robinson Co.,* 846 F.3d 1251, 1273-74 (9th Cir. 2016) (holding that arbitration agreement containing two unconscionable provisions was enforceable as the two provisions could be severed and the parties could proceed under the remaining terms).

### D. Defendant Barragan May Also Enforce The Arbitration Agreement

### 1. Barragan May Enforce the Parties' Arbitration Agreements Under the Agency Exception

A non-signatory defendant to an arbitration agreement may nevertheless compel arbitration if plaintiff alleges that the non-signatory defendant acted as an "agent" of a signatory to the arbitration agreement. *Arouh v. GAN Ltd.*, No. 8:23-CV-02001-FWS, 2024 WL 3469032, at *8–10 (C.D. Cal. Mar. 22, 2024); *Dryer v. Los Angeles Rams*, 40 Cal. 3d 406, 418 (1985) ("If, as the complaint alleges, the individual defendants, though not signatories, were acting as agents for the Rams, then they are entitled to the benefit of the arbitration provisions."); *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 788 (2017) ("defendant may enforce the arbitration agreement[] when a plaintiff alleges a defendant acted as an agent of a party to an arbitration agreement …") (internal quotations omitted).

Here, Barragan is entitled to enforce the arbitration agreements because Plaintiffs averred that he had acted as an agent of PRP and PCRG in perpetrating the Labor Code violations alleged in the Complaint. (Dkt. 1, Ex. A, Cmplt, ¶ 9 ("each defendant acted in all respects pertinent to this action, as the agent of the other defendant(s)"); ¶ 10 ("each of the Defendants was the agent . . . of each of the other defendants"); ¶ 15 ("Defendants, and each of them, are joint employers.").  Because Plaintiffs allege that defendant Barragan acted as an agent of PRP and PCRG, the agency exception permits Barragan to enforce the agreements. *See e.g.*, *Garcia*, 11 Cal. App. 5th at 788 ("As the alleged joint

12

321863097v.3

employers, [the defendants] were agents of each other in their dealings with [Plaintiff]. Accordingly, [the nonsignatory defendant] is entitled to compel arbitration of [plaintiff's] claims against it under the arbitration clause in [plaintiff's] contract with [the signatory defendant.]"); *Dryer*, 40 Cal. 3d at 418 (nonsignatories alleged to have been acting as agents of a signatory defendant are entitled to the benefit of arbitration provisions in a contract signed by the plaintiff and the signatory defendant); *Villamar v. Clean Harbors Env't Servs. Inc.*, No. 2:22-cv-03966- MEMF-(JEMx), 2022 WL 4465549, at *2-3 (C.D. Cal. Sept. 23, 2022) (permitting nonsignatory defendant to enforce arbitration agreement under the agency theory discussed in *Dryer* and *Pexco*); *Marenco v. DirecTV LLC*, 233 Cal. App. 4th 1409, 1417 (2015) ("Enforcement is permitted where the nonsignatory is the agent for a party to the arbitration agreement, or the nonsignatory is a third party beneficiary of the agreement.") (internal citations omitted); *see also Thomas v. Westlake*, 204 Cal. App. 4th 605, 614-15 (2012) ("plaintiff's allegations of an agency relationship among defendants is sufficient to allow the alleged agents to invoke the benefit of an arbitration agreement executed by their principal even though the agents are not parties to the agreement"). Accordingly, the agency allegations in the Complaint support Barragan's right to compel arbitration under established principles allowing agents of signatories to enforce arbitration agreements.

### 2. Defendant Barragan May Enforce the Parties' Arbitration Agreements Under the Doctrine of Equitable Estoppel

A non-signatory may also compel arbitration under a theory of equitable estoppel "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *Arouh v. GAN Ltd.*, No. 8:23-CV-02001-FWS, 2024 WL 3469032, at *8–10 (C.D. Cal. Mar. 22, 2024) (internal citations omitted).

Here, Barragan is entitled to compel arbitration under the doctrine of equitable estoppel because Plaintiffs allege that Barragan, while acting as their manager, violated or caused the violations of numerous Labor Code provisions that underlie Plaintiffs' claims against PRP and PCRG. (*See generally* Cmplt.) They allege that Barragan acted in concert with PRP and PCRG as their agent and co-conspirator, and that his conduct was authorized and ratified by those entities. (Cmplt. ¶¶ 9–11). They also allege that Barragan and the corporate defendants operated as alter egos, with a unity of interest and

13

321863097v.3

ownership such that their separate legal identities should be disregarded. (Cmplt. ¶¶ 12–15.) The Complaint attributes to Barragan the same alleged wage-and-hour violations that form the basis of Plaintiffs' claims against PRP and PCRG. (*See generally* Cmplt.) Because Plaintiffs allege that Barragan's alleged conduct was substantially interdependent and coordinated with PRP's and PCRG's, and because those allegations are intimately connected to the employment relationships governed by the arbitration agreement, equitable estoppel applies and permits Barragan to enforce the agreement. *See Pexco*, 11 Cal. App. 5th at 786-787 (allegations of Labor Code violations are sufficiently intertwined with a plaintiff's employment and any related arbitration clauses to warrant application of equitable estoppel doctrine to allow nonsignatory third-party beneficiaries to seek enforcement when alleged violations are "based on the same facts and are inherently inseparable from the arbitrable claims."); *Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 714–17 (2010) ("the doctrine of equitable estoppel applies to all of plaintiff's claims against [defendant]" such that "[e]ach is subject to arbitration because it derives from, relies on, or is intimately intertwined with the subject contract containing the arbitration agreement."); *Boucher v. Alliance Title Co., Inc.*, 127 Cal. App. 4th 262, 271-72 (2005) (arbitration with nonsignatory appropriate where the causes of action against it are "intimately founded in and intertwined with the underlying contract obligations"); *Metalclad Corp. v. Ventana Envtl. Org. P'ship*, 109 Cal. App. 4th 1705, 1713 (2003); *Ortiz v. Volt Mgmt. Corp.*, No. 16-cv-07096-YGR, 2017 WL 2404977, at *2 (N.D. Cal. June 2, 2017) ("[I]t is appropriate to allow the nonsignatory defendant [joint employer] to compel plaintiff into arbitration because his claims were 'intimately founded in and intertwined' with his employment relationship" with the signatory staffing agency.); *Champion v. Amazon.com, LLC*, No. 18-cv-05222-MMC, 2019 WL 4345915, at *2 (N.D. Cal. Sept. 12, 2019) (granting nonsignatory alleged joint employer's motion to compel arbitration of wage and hour claims because the claims alleged against it were "based on the same facts and are inherently inseparable from the arbitrable claims against the signatory [staffing company] defendant"); *Amin v. Advanced Sterilization Prods. Svcs. Inc.*, No. SACV 18-1528 JVS (JDEx), 2019 WL 2912862, at *8 (C.D. Cal. Jan. 7, 2019) (granting nonsignatory alleged joint employer's motion to compel arbitration of wage and hour claims because such claims were "sufficiently intertwined" with the plaintiff's

14

321863097v.3

relationship with the defendant staffing agency with whom plaintiff was contractually bound to arbitrate). As such, Plaintiffs are equitably estopped from litigating their claims against Barragan.

### 3. Defendant Barragan May Enforce the Parties' Arbitration Agreements As a Third-Party Beneficiary

A nonsignatory to a contract may enforce the provisions of the contract as a third-party beneficiary if he establishes each of the following in light of "all of the relevant circumstances": (1) "the third party would in fact benefit from the contract," (2) "a motivating purpose of the contracting parties was to provide a benefit to the third party," and (3) permitting the third party to enforce the contract "against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830, (2019).

As the Court of Appeal explained in *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35 (2009):

> The contract need not be exclusively for the benefit of the third party in order to permit enforcement, and the third party does not need to be the sole or the primary beneficiary. Further, the third party need not be identified as a beneficiary, or even named, in the contract.… If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The parties are presumed to intend the consequences of a performance of the contract.

*Id.*, at 51. "Insofar as intent to benefit a third person is important in determining his right to bring an action under a contract, it is sufficient that the promisor must have understood that the promisee had such intent… No specific manifestation by the promisor of an intent to benefit the third person is required." *Lucas v. Hamm*, 56 Cal. 2d 583, 591 (1961) (internal citations omitted).

Here, it is indisputable that Plaintiffs understood that PRP intended the arbitration agreements to benefit managers such as Barragan who are sued in their capacity as agents of PRP. Plaintiffs allege that Barragan, acting as their manager and agent of PRP and PCRG, committed the same wage-and-hour violations that form the basis of their claims against those entities. (Cmplt. ¶¶ 8–11.) They further assert that Barragan's conduct was authorized and ratified by PRP and PCRG and that he operated in concert with them as part of a joint employment and alter ego relationship. (Cmplt. ¶¶ 12–15.) Because employers necessarily act through their agents, and Plaintiffs' claims here arise from conduct allegedly

15

carried out by Barragan in the course and scope of his agency for PRP and PCRG, it would be illogical for the arbitration agreement to apply to PRP and PCRG but exclude the agents (which would include Barragan) through whom PRP and PCRG necessarily would have acted. *See Ronay Fam. Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 839 (2013) ("A third party may enforce a contract where he shows that he is a member of a class of persons for whose benefit it was made."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 171 Cal. App. 4th at 51 (excess insurer was third-party beneficiary of contract between bank and workers' compensation administrator because the underlying contract's purpose—to minimize the bank's workers' compensation liability—necessarily reduced excess insurer's liability exposure, making that benefit part of the intended outcome of the contract, not merely a collateral consequence); *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 636–40 (1997) (securities dealer was intended beneficiary of arbitration clause in former employee's application form for registration with securities industry's self-regulatory organization). For these reasons, Barragan has a right to enforce the arbitration agreements between Plaintiffs and Defendants PRP and PCRG as a third-party beneficiary of those agreements.

### E. The Court Must Compel Plaintiffs' Individual Claims To Arbitration

"[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 687 (2010) ("the differences between bilateral and class-action arbitration are too great … to presume … that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings"). In 2019, the Supreme Court extended the rationale in *Stolt-Nielsen* to hold that the FAA also bars any order requiring class arbitration even where the agreement is ambiguous (not just silent) about the availability of class arbitration. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185-186 (2019). The Court held in *Lamps Plus* that an "ambiguous agreement can[not] provide the necessary 'contractual basis' for compelling class arbitration." *Lamps Plus*, 587 U.S. at 183. Therefore, the arbitration agreement must contain a clear unmistakable language stating that the parties specifically intended to allow for class arbitration in order for a class arbitration to proceed.

321863097v.3

Each agreement here clearly envisions individual arbitration between the parties, specifying that it applies to "**CLAIMS ARISING BY AND BETWEEN THE COMPANY AND YOU**." Johnson Decl., ¶¶ 5-8, Exhs. A-D, (emphasis in original). The Parties' arbitration agreements do not contain any language, express or even implied, that establishes the Parties' mutual intent to permit class arbitration. Because Plaintiffs' individual claims against PRP and PCRG are clearly governed by their arbitration agreements, and the agreements are entirely silent on the issue of class arbitration, Plaintiffs' claims against Defendants must be compelled to arbitration on an individual basis only.

**F.    The Court Must Dismiss Plaintiffs' Class Claims Or, in the Alternative, Stay Their Class Claims Pending The Completion of The Arbitration of Their Individual Claims**

Federal district courts in California have repeatedly held that a plaintiff's putative class claims must be dismissed once individual arbitration has been compelled because the plaintiff can no longer adequately represent the class. *See e.g.*, *Anthony v. Ritz-Carlton Hotel Co., L.L.C.*, No. 2:24-CV-00965-DAD-AC, 2025 WL 931928, at \*9–10 (E.D. Cal. Mar. 27, 2025) ("As a matter of federal procedure, courts granting a motion to compel individual arbitration simultaneously render the individual's class claims moot.") (citing cases); *Maharaj v. Charter Commc'ns, Inc.*, No. 20-CV-00064-BAS-LL, 2021 WL 5014352, at \*10–11 (S.D. Cal. Oct. 27, 2021) ("[g]iven this Court's decision to grant Defendant's Motion to compel arbitration of Plaintiff's wage-and-hour claims, Plaintiff cannot continue to serve as class representative of the putative class" and so the court must dismiss Plaintiff's class-wide claims) (cases cited); *Vasquez v. RSI Home Prods., Inc.*, No. 820CV01494JWHJDEX, 2020 WL 6778772, at \*20 (C.D. Cal. Nov. 12, 2020) (ordering dismissal of plaintiff's class claims once court granted defendant's motion to compel individual arbitration: "In view of the Court's decision to grant [defendant's] Motion to Compel Arbitration with respect to [plaintiff's] individual claims, [plaintiff] cannot continue to serve as class representative of the putative class.")

In the present case, because Plaintiffs' individual claims against Defendants must be compelled to arbitration pursuant to the Parties' valid and enforceable arbitration agreements, Plaintiffs here are no longer adequate to prosecute class claims on behalf of the putative class. Accordingly, it is appropriate for this Court to dismiss Plaintiffs' class claims.

17

**IV.    CONCLUSION**

The arbitration agreements that Plaintiffs signed are valid and enforceable. Pursuant to their agreements, the Court must compel arbitration of each Plaintiff's individual claims, and either dismiss their class claims, or, in the alternative, stay further proceedings with respect to their class claims pending the outcome of the arbitrations of their individual claims. Defendants respectfully request that the Court grant their motion in its entirety.

DATED: November 24, 2025                      Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Elizabeth J. MacGregor*
    Elizabeth J. MacGregor
    Steven Wong
    Attorneys for Defendants
    PEAK CALIFORNIA RESTAURANT
    GROUP, LLC; PEAK RESTAURANT
    PARTNERS, LLC; ERICK BARRAGAN

18

321863097v.3