UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVETTE GONZALEZ, et al., | Case No. 25-cv-04068-AMO |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO COMPEL ARBITRATION** |
| PEAK CALIFORNIA RESTAURANT GROUP, LLC, et al., | Re: Dkt. No. 28 |
| Defendants. | |

This is a putative wage and hour class action.  Before the Court is Defendants Peak California Restaurant Group, LLC, Peak Restaurant Partners, LLC, and Erick Barragan's motion to compel arbitration.  Having read the parties' papers and carefully considered their arguments therein, as well as the relevant legal authority, and good cause appearing, the Court **GRANTS** the motion for the following reasons.

## BACKGROUND

Plaintiffs Yvette Gonzalez, Rosa Guzman, Margarita Gonzalez, and Jorge Berroteran are or were employees of Defendant Peak Restaurant Partners ("PRP").  Declaration of Sandor Johnson ("Johnson Decl.") ¶ 3.  Each Plaintiff worked as restaurant staff at an IHOP restaurant located in Richmond, California.  *Id.*  Plaintiffs signed the same arbitration agreement with PRP using Talent Reef, PRP's electronic onboarding system for new hires.  Johnson Decl., Exhs. A-D.  Talent Reef requires an employee to create a unique username and confidential password.  *Id.* ¶ 4.  The arbitration agreement provides that it is the "exclusive way to resolve employment related disputes" and states in bold, all-capital letters:

United States District Court
Northern District of California

**ARBITRATION OF THE DISPUTES AND CLAIMS COVERED BY THIS POLICY SHALL BE THE SOLE AND EXCLUSIVE METHOD OF RESOLVING ANY AND ALL EXISTING AND FUTURE DISPUTES OR CLAIMS ARISING BY AND BETWEEN THE COMPANY AND YOU.**

*Id.* The agreement provides that the costs of arbitration "shall be allocated and paid in accordance with then-applicable federal law" and requires PRP to "pay all of the arbitrator's fees and the arbitration-related costs" if required by applicable federal law. *Id.* at 2.

On April 1, 2025, Plaintiffs filed a putative class action complaint against Defendants asserting eight claims: (1) failure to pay overtime wages, (2) failure to pay minimum wages, (3) failure to provide meal periods, (4) failure to provide rest periods, (5) waiting time penalties, (6) wage statement violations, (7) failure to indemnify necessary business expenses, and (8) unfair competition. *See* Complaint, Dkt. No. 1, at 25. On November 24, 2025, Defendants filed a motion to compel arbitration.[1] Dkt. No. 28. Plaintiffs filed an opposition on December 8, 2025, Dkt. No. 31, and Defendants' reply followed on December 15, 2025, Dkt. No. 33.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs motions to compel arbitration. 9 U.S.C. § 1, et seq. Section 2 of the FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The FAA "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability[.]" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (citation omitted). The FAA requires that courts consider two "gateway issues": "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Plaintiffs do not dispute that the arbitration agreement encompasses the dispute at issue.

---

[1] In conjunction with their motion to compel arbitration, Defendants request the Court take judicial notice of (1) excerpts from the American Arbitration Association's Employment/Workplace Arbitration Rules and Mediation Procedures and (2) excerpts from the American Arbitration Association's Commercial Arbitration Rules and Mediation Procedures. Dkt. No. 29. The Court did not consider these documents in ruling on the instant motion and thus DENIES the request as moot.

"In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation and quotations omitted). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

**DISCUSSION**

The Court first considers Plaintiffs' objections to Defendants' evidence provided in support of their motion to compel. It then considers the motion to compel arbitration.

## I.    Evidentiary Objections

Plaintiffs submitted evidentiary objections, Dkt. No. 32, to the declaration of Sandor Johnson, Dkt. No. 28-2, an exhibit to Defendants' motion to compel arbitration. As an initial matter, these objections are procedurally improper. Civil Local Rule 7-3(a) states that "[a]ny evidentiary and procedural objections to [a] motion must be contained within the brief or memorandum." Plaintiffs did not comply with this provision of the Local Rules, *see* Dkt. No. 32, and these objections are properly overruled on this basis alone.

On the merits, Plaintiffs object to the four arbitration agreements attached to Johnson's declaration as improperly authenticated documents pursuant to Federal Rule of Evidence ("FRE") 901. *Id.* at 2. They additionally object to six paragraphs of Johnson's declaration, arguing that Johnson lacks personal knowledge under FRE 602. *Id.* at 2-6. These objections fail, as Johnson properly authenticated the arbitration agreements and introduced evidence supporting his personal knowledge. An individual's job duties can establish sufficient knowledge for authenticating an agreement. *See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (a declarant's "personal knowledge and competence to testify are reasonably inferred from their positions"). Here, Johnson attested that through the performance of his job responsibilities as Area Director for PRP, he is "familiar with the business operations of PRP" and "with how PRP

3

creates and maintains employee files[,]" Johnson Decl. ¶¶ 2, 10, and that he had access to and reviewed the personnel files (including the arbitration agreements) of each Plaintiff, *id.* ¶ 10. Johnson also personally completed his onboarding through Talent Reef and received training on the system. Declaration of Patricia Ards, Dkt. No. 33-1 ("Ards Decl.") ¶ 11; Reply Declaration of Sandor Johnson, Dkt. No. 33-2 ("Johnson Reply Decl.") ¶ 2. These facts are sufficient to authenticate the arbitration agreements and to establish Johnson's personal knowledge. *See Mitchell v. Ecolab, Inc.*, No. 1:22-CV-01088- EPG, 2023 WL 2666391, at *4 (E.D. Cal. Mar. 28, 2023) (HR declaration "based on [declarant's] own knowledge, her review of business records, and on her position as a Human Resources Representative II, which makes her familiar with [defendant's] practices with respect to employee agreements . . . lays a proper foundation and establishes her personal knowledge as to her declaration and the attached exhibits [i.e., arbitration agreements]").[2]

Finally, Plaintiffs additionally object to portions of Johnson's declaration, arguing that they violate FRE 701.[3] Dkt. No. 32 at 2-6. As relevant, Plaintiffs object to Johnson's statement that "Talent Reef required each candidate to create a unique user name and confidential password of their choice to access and complete onboarding documents. Each new hire had to establish their own user name and confidential password in the Talent Reef system." Dkt. No. 32 at 2-3 (citing *United States v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2015) (holding that "a lay opinion witness 'may not testify based on speculation, rely on hearsay or interpret unambiguous, clear statements.' ")). Johnson is not expressing an opinion in this portion of his declaration – he is testifying to the process required for new hires as he knows it. Thus, Plaintiffs' argument under

_____

[2] The arbitration agreements are also admissible as business records. *See* Fed. R. Evid. 803(6); *Lomeli v. Midland Funding, LLC*, No. 19-CV-01141-LHK, 2019 WL 4695279, at *5 (N.D. Cal. Sept. 26, 2019) ("Rule 803(6)'s foundation requirement 'may be satisfied by the testimony of anyone who is familiar with the manner in which the document was prepared, even if he lacks firsthand knowledge of the matter reported, and even if he did not himself either prepare the record or even observe its preparation.' ").

[3] FRE 701 prohibits opinion testimony by a lay person unless the opinion is (a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony to determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701.

United States District Court
Northern District of California

FRE 701 fails. The Court OVERRULES Plaintiffs' evidentiary objections. The Court does not otherwise rely on the parts of the declaration to which Plaintiffs object. Accordingly, the Court OVERRULES those objections as moot.

## II. Motion to Compel Arbitration

Plaintiffs argue the arbitration agreement is unenforceable because (1) Plaintiffs' signatures on the purported agreement are not "valid or an act of the Plaintiffs" so no agreement exists at all, (2) there was no mutual assent for Plaintiff Guzman, and (3) the agreement is unconscionable. Dkt. No. 31 at 9-10. The Court addresses each argument in turn.

### A. Validity of Plaintiffs' Signatures

First, Plaintiffs argue that Defendants "fail to prove Plaintiffs signed the purported agreement[]." Dkt. No. 31 at 10. Because Plaintiffs challenged the validity of their signatures on the arbitration agreement, Defendants must show by a preponderance of the evidence that Plaintiffs' signatures are authentic. *Espejo v. S. California Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016). "The [validity of an electronic signature] may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *Id.* at 1061 (quoting Cal. Civ. Code § 1633.9(a)). The "burden of authenticating an electronic signature is not great." *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 844 (2014).

Here, Defendants have met their burden of authenticating Plaintiffs' signatures. Johnson declared under penalty of perjury that to gain access to and sign the agreement, employees must log in to their password-protected account using their self-created usernames and passwords. Johnson Decl. ¶ 4. Once in their account, employees must select "I agree" to apply their signatures to the agreement. *Id.* These factual details properly authenticate Plaintiffs' signatures on the arbitration agreement. *See Espejo*, 246 Cal. App. 4th at 1062 (holding that declaration detailing employer's security precautions and steps applicant must take to place signature properly authenticated arbitration agreements).

Plaintiffs attest that they have no present recollection of creating Talent Reef accounts or

United States District Court
Northern District of California

5

receiving and e-signing the arbitration agreement. [4] *See* Declaration of Margarita Gonzalez, Dkt. No. 31-1, ¶ 3 ("I do not recall that Defendants ever emailed any onboarding documents to sign online and do not recall making any type of online account . . . and do not recall using [Talent Reef] to sign any documents[.]"); Declaration of Rosa Guzman, Dkt. No. 31-2, ¶ 4 ("I do not recall signing any arbitration agreement[.]"); Declaration of Yvette Gonzalez, Dkt. No. 31-2, ¶ 3 ("I do not recall that Defendants ever emailed any onboarding documents to sign online and I do not recall making any type of online account[.]").  Not recalling an event is not evidence that the event did not occur, and courts have consistently rejected the notion that an employee's failure to recall signing an agreement establishes lack of an agreement.  *See Espejo*, 246 Cal. App. 4th at 1062 (rejecting argument that an arbitration agreement did not exist because the employee failed to recall signing it); *Kittrell v. USA Debusk LLC*, No. 25-CV-02432-MMC, 2025 WL 3049883, at *1 (N.D. Cal. Oct. 31, 2025) (same); *Duval v. Costco Wholesale Corp.*, No. 22-CV-02338-TSH, 2023 WL 3852694, at *3 (N.D. Cal. June 5, 2023) (same); *Ngo v. PMGI Fin., LLC*, No. 18-CV-05401-JCS, 2018 WL 6618316, at 5 (N.D. Cal. Dec. 18, 2018) (same).  Accordingly, the Court finds that Defendants carried their burden of showing by a preponderance of the evidence that Plaintiffs signed the arbitration agreement.

### B.  Mutual Assent

Second, Plaintiff Guzman argues a lack of mutual assent because Guzman was not provided the arbitration agreement in a language she could read.  Dkt. No. 31 at 13 (citing *Sanchez v. Superior Court*, 108 Cal. App. 5th 615, 626 (2025) and *Nunez v. Cycad Management LLC*, 77 Cal. App. 5th 276, 280 (2022)).  The *Sanchez* and *Nunez* courts found arbitration agreements unenforceable in part because plaintiffs were given arbitration agreements in English, which they could not read.  As an initial matter, both cases found that the language barrier established procedural unconscionability, not lack of assent.  *Sanchez*, 108 Cal. App. 5th at 626; *Nunez*, 77 Cal. App. 5th at 283-284.  Moreover, in both *Sanchez* and *Nunez*, plaintiffs were not given time to review the arbitration agreement prior to signing.  *Id.*  Guzman does not contend that she was

---

[4] Plaintiff Berroteran does not argue his signature was invalid.  *See generally* Dkt. No. 31.

provided with inadequate time to review the arbitration agreement. Thus, these cases are not dispositive.

The fact that Guzman could not read the arbitration agreement, standing alone, does not establish lack of assent. *See Hulsey v. Elsinore Parachute Ctr.*, 168 Cal. App. 3d 333, 339 (Ct. App. 1985) ("It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it."); *Randas v. YMCA of Metro. Los Angeles*, 17 Cal. App. 4th 158, 163 (1993) ("Ordinarily, one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it. If he cannot read, he should have it read or explained to him."); *Molina v. Scandinavian Designs, Inc.*, No. 13-CV-04256-NC, 2014 WL 1615177, at *3 (N.D. Cal. Apr. 21, 2014) ("[U]nder established California law, even if Molina could read very little English, Molina's signature on the Arbitration Agreement manifests his assent to its terms, binding him to the contract."). Thus, Guzman cannot avoid enforcement of the arbitration agreement on this ground.

## C. Unconscionability

Third, Plaintiffs argue that the agreement is procedurally and substantively unconscionable. A finding that an agreement is unconscionable requires "both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, [and] the latter on overly harsh or one-sided results." *Armendariz v. Foundation Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (quotations and citation omitted). These factors need not be present to the same degree but are considered on a "sliding scale" relative to each other. *Davis v. Kozak*, 53 Cal. App. 5th 897, 905 (2020). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 821 (2010) (quotations omitted); *see also OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125-26 (2019) (describing "sliding scale" where "the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required."). The Court first analyzes procedural unconscionability and then turns to substantive unconscionability.

### i. Procedural Unconscionability

Plaintiffs contend that the agreement is procedurally unconscionable because it is adhesive. Dkt. No. 31 at 14-15. "An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' " *OTO*, 8 Cal. 5th at 126. In California, "[a]rbitration clauses in employment contracts have been upheld despite claims that the clauses were unconscionable because they were presented as part of an adhesion contract on a take-it-or-leave-it basis." *Giuliano v. Inland Empire Pers., Inc.*, 149 Cal. App. 4th 1276, 1292 (2007); *see also Lagatree v. Luce, Forward, Hamilton & Scripps LL*P, 74 Cal. App. 4th 1105, 1127 (1999) ("the cases uniformly agree that a compulsory pre-dispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis. An employee who signs such an agreement is obligated to submit employment-related disputes to arbitration."). The fact that PRP required Plaintiffs to sign the arbitration agreement as a condition of their employment provides for a "fairly low level of procedural unconscionability." *Alvarez v. Altamed Health Servs. Corp.*, 60 Cal. App. 5th 572, 591 (2021).

Plaintiff Guzman additionally contends the agreement suffers from surprise because PRP provided her with the agreement in English, when she did not read English. Dkt. No. 31 at 14-15. Guzman has not alleged that Defendants discouraged or prevented her from having the agreement translated. To the contrary, a human resources representative for PRP declared that "[e]mployees have multiple options for receiving and completing onboarding documents in Spanish." Ards. Decl. ¶ 10. For example, the Talent Reef platform allows employees to select Spanish as their language and then provides new-hire paperwork in Spanish. *Id.* Additionally, the human resources department has Spanish language versions of new-hire paperwork that they can and do provide to prospective employees. *Id.* Based on this record, Plaintiffs have shown at most a minimal degree of procedural unconscionability. *See Limon v. ABM Indus. Groups, LLC*, No. 3:18-CV-00701, 2018 WL 3629369, at *5 (S.D. Cal. July 31, 2018) ("the Arbitration Agreement is not procedurally unconscionable based upon Plaintiff's purported inability to comprehend English"); *Garcia v. Din Tai Fung Rest., Inc.*, No. 20-CV-02919-BLF, 2020 WL 6822909, at *7

(N.D. Cal. Nov. 20, 2020) ("providing an arbitration agreement only in English to an employee with limited English capability adds 'only a minimal degree of procedural unconscionability' when there is an opportunity to seek help"); *Molina*, 2014 WL 1615177, at *7, n. 1 (finding "a minimal degree of procedural unconscionability" where the arbitration agreement was an adhesion contract, and noting that "[Plaintiff's] difficulty with reading English would not alter the Court's unconscionability analysis").

### ii.  Substantive Unconscionability

Plaintiffs further contend that the agreement is substantively unconscionable because it is (1) one-sided, (2) of broad scope and unlimited duration, (3) can only be unilaterally modified by Defendants, (4) has a fee-splitting provision, and (5) requires an employee to pay the employer's attorney's fees for bringing an untimely claim.  The Court considers each argument in turn.

First, Plaintiffs assert the agreement is substantively unconscionable because it is one-sided.  Dkt. No. 31 at 15-16.  But the arbitration agreement is decidedly mutual – it requires Plaintiffs to arbitrate any claims against the company and its affiliates, and it also requires the company and its affiliates to arbitrate any claims against Plaintiffs.  The agreement states:

> **THE COMPANY AND YOU UNDERSTAND AND AGREE THAT ARBITRATION OF THE DISPUTES AND CLAIMS COVERED BY THIS POLICY SHALL BE THE SOLE AND EXCLUSIVE METHOD OF RESOLVING ANY AND ALL EXISTING AND FUTURE DISPUTES OR CLAIMS ARISING BY AND BETWEEN THE COMPANY AND YOU.**

Johnson Decl., Exhs. A-D (emphasis in original).  Thus, this argument fails.

Second, Plaintiffs urge the Court to find that, though the agreement describes itself as a "way to settle employment disputes[,]"[5] the plain language of the release is much broader.  But a

---

[5] Paragraph one of the agreement states:

> As an expeditious and economical way to settle *employment disputes* without the need to go through the courts, Peak Restaurant Partners, LLC (together with its affiliates, subsidiaries or parent corporations or entities, and their successors and assigns) (hereinafter referred to collectively as "the Company" or "PRP") has adopted this Dispute Resolution Policy and Procedure for itself and all of its employees as the exclusive way to resolve *employment related disputes*.

9

"contract must be construed as a whole and the intention of the parties must be ascertained from the consideration of the entire contract, not some isolated portion." *Cnty. of Marin v. Assessment Appeals Bd.*, 64 Cal. App. 3d 319, 325 (1976). "Under basic rules of statutory and contract construction, provisions subject to both lawful and unlawful interpretations are to be interpreted in a manner which makes them lawful." *City of San Diego v. Rider*, 47 Cal. App. 4th 1473, 1490 (1996). Accordingly, viewing the agreement in its entirety, the Court finds that arbitration is required only for employment-related disputes and thus is not substantively unconscionable on this ground. *See Burkhardt v. Extra Space Mgmt., Inc.*, No. 2:25-CV-00547-DJC-CKD, 2025 WL 2172287, at *7 (E.D. Cal. July 31, 2025) (finding no infinite scope provision because "the parties' intent to require arbitration for employment-related actions" was evident based on illustrative language elsewhere in the arbitration agreement); *cf. Cook v. Univ. of S. California*, 102 Cal. App. 5th 312, 321 (2024) (finding arbitration agreement substantively unconscionable where it expressly stated that it applied to all claims "whether or not arising out of Employee's University employment, remuneration or termination.").

Plaintiffs additionally aver that the agreement is unconscionable because it applies indefinitely. *See* Dkt. No. 31 at 16 (citing *Cook*, 102 Cal. App. 5th at 322). The agreement states:

> I and PRP are agreeing, and have agreed, to submit all such claims and disputes to binding arbitration. It is intended that this Dispute Resolution Policy and Procedure and Agreement to Arbitrate shall at all times apply to PRP and to me after its effective date of September 10, 2014.

Johnson Decl., Exhs. A-D at 4. But "courts that have applied the holding in *Cook* have, like *Cook*, involved an arbitration agreement that was of 'indefinite' duration and required only the employee to submit to arbitration 'any' claims the employee ever might have against a large number of non-signatories." *Kittrell*, 2025 WL 3049883, at *7. In contrast, the arbitration agreement here is mutual and applies only to employment-related disputes. Thus, the indefinite applicability of the arbitration agreement does not render it substantively unconscionable, particularly because the

---

Johnson Decl., Exhs. A-D (emphasis added).

10

agreement only applies to employment-related disputes, and therefore its force could not extend beyond Plaintiffs' employment with PRP. *See id.* at *6 (holding that the arbitration agreement "although potentially lasting for a period of time following the termination of [plaintiff's] employment, cannot be characterized as indefinite in duration, as its coverage is limited to issues relating to [plaintiff's] employment, which would end on a given date.")

Third, Plaintiffs contend that the agreement is substantively unconscionable because it has a unilateral modification right for PRP. Dkt. No. 31 at 17 (*citing Ingle v. Circuit City Stores, Inc.*, 328 F. 3d 1165, 1179 (9th Cir. 2003) ("[W]e conclude that the provision affording [defendant] the unilateral power to terminate or modify the contract is substantively unconscionable.")). Defendants do not contest that the agreement contains a unilateral modification provision. Dkt. No. 33 at 19. The unilateral modification provision is substantively unconscionable. *See Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*, No. 17-CV-02794-VKD, 2018 WL 4599645, at *8 (N.D. Cal. Sept. 25, 2018) (applying *Ingle*, 328 F. 3d 1165 to find unilateral modification provision substantively unconscionable).

Fourth, Plaintiffs argue that the agreement's fee-splitting provision is unconscionable. Dkt. No. 31 at 17. The agreement provides:

> The costs of arbitration, including the arbitrator's fees, shall be allocated and paid in accordance with then-applicable federal law. If required by applicable federal law, PRP shall pay all of the arbitrator's fees and the arbitration-related costs. If, however, under applicable law, PRP is not required to pay all of the arbitrator's fees and/or the arbitration-related costs, such fees and costs will be apportioned between the parties by the arbitrator in accordance with applicable federal law and, if applicable federal law is silent on this issue, such arbitration fees and costs shall be allocated equally between PRP and the Employee.

Johnson Decl., Exhs. A-D at 3. Fee splitting provisions are generally unconscionable in the Ninth Circuit. *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 785 (9th Cir. 2002) (holding that a "fee allocation scheme which requires the employee to split the arbitrator's fees with the employer would alone render an arbitration agreement substantively unconscionable."). But where "the agreement itself effectively states that the fee-sharing provision is inapplicable if it is unconscionable under [applicable] law[,]" the Ninth Circuit upholds the provision. *See Jackson v. Rent-A-Ctr. W., Inc.*, 581 F.3d 912, 920-21 (9th Cir. 2009), *rev'd on other grounds*, 561 U.S. 63

United States District Court
Northern District of California

11

(2010).  The instant agreement states that PRP will pay all arbitration-related costs if required by applicable law.  Johnson Decl., Exhs. A-D at 3.  Thus, because cost-sharing provisions are disallowed in the Ninth Circuit, *see Ferguson*, 298 F.3d at 785, this provision has no force and is not unconscionable.

Fifth, Plaintiffs assert that the agreement's provision requiring an employee to pay the employer's attorney's fees for bringing an untimely claim is unconscionable because employees cannot be required to bear "any expense beyond the usual costs associated with bringing an action in court." *Ferguson*, 298 F.3d at 785.  In response, Defendants argue that this provision is not a "unique expense[] of arbitration" prohibited by the California Supreme Court.  *See* Dkt. No. 33 at 20 (citing *Armendariz*, 24 Cal. 4th at 111).  Defendants cite to *Valle v. Lowe's HIW, Inc.*, for the proposition that "it is hardly unconscionable to sanction parties for bringing arbitration actions that are in bad faith or unreasonable under the circumstances."  No. 11-1489-SC, 2011 WL 3667441, at *7 (N.D. Cal. Aug. 22, 2011).  But here the arbitration agreement does not limit fee-shifting to claims brought in bad faith.  *See* Johnson Decl., Exhs. A-D at 2 ("If any party attempts to bring an untimely Dispute, that party shall reimburse the other party for all expenses, including attorney's fees incurred in responding to such untimely Dispute.").  Defendants offer no authority for the proposition that parties can typically recover attorney's fees for time-barred claims; thus, they have not established that this is a "usual cost[] associated with bringing an action in court." *Ferguson*, 298 F.3d at 785.  Accordingly, the Court finds this provision unconscionable.

In sum, the Court finds the unilateral modification and fee-shifting provisions substantively unconscionable.

### iii.  Severance

Finally, because the Court finds two provisions of the arbitration agreement unconscionable, it must assess whether to sever these provisions and enforce the arbitration agreement.  *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1272 (9th Cir. 2017).  In California, "the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 985-86 (2010) (finding that the trial court abused its discretion by failing to sever an unconscionable

provision that could have been severed "without affecting the remainder of the agreement" as it did not "permeate the agreement with an unlawful purpose."). The "dispositive question is whether 'the central purpose of the contract' is so tainted with illegality that there is no lawful object of the contract to enforce." *Poublon*, 846 F.3d at 1273 (quoting *Marathon Entm't, Inc. v. Blasi*, 42 Cal. 4th 974, 996 (2008)). "If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Id.* (quotation marks omitted). Here, the unilateral modification and fee-shifting provisions are collateral to the main purpose of the contract, to require arbitration. Neither unconscionable provision permeates the entire contract or taints it with illegality. Accordingly, the Court SEVERS the unilateral modification and fee-shifting provisions and enforces the remainder of the agreement.

## CONCLUSION

For the foregoing reasons, the Court **SEVERS** the unilateral modification and fee-shifting provisions from the arbitration agreement. The Court **GRANTS** the motion to compel arbitration. Each Plaintiffs' individual claims are compelled to arbitration. The Court **STAYS** the class claims pending completion of the arbitration proceedings. The parties **SHALL** file a status report informing the Court of the status of mediation on June 16, 2026, and every 90 days thereafter.

**IT IS SO ORDERED.**

Dated: March 18, 2026

_____
ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**

13